KLEES, Judge.
The Louisiana State Racing Commission appeals the decision of the trial court reversing the Commission’s decision to suspend James W. King for violation of Rule LAC 11-6:53, SSilL[1]
On April 14, 1981, the horse, “Jewel Ma-' rie”, won the first race and the horse, “Sad Majority”, won the seventh race at Jefferson Downs Racetrack. James W. King was the trainer of these horses and Dr. Daniel R. Zehr was the veterinarian. Approximately 30 hours prior to post time, Dr. Zehr, with the permission of King, administered 500 milligrams of Banamine to each horse. Following their respective races, urine tests from both horses were positive for Banamine (Flunixin). A quantitative analysis of the specimens revealed that the Banamine in the urine of “Jewel Marie” was 1.4 nanagrams per milliliter or 1.4 parts per billion and the Banamine in the urine of “Sad Majority” was 6.6 nanagrams per milliliter or 6.6 parts per billion.
The racing stewards conducted hearings on May 19, 1981 and on May 21, 1981, issued Rulings Number 86 and 87 suspending King for violation of Rule LAC 11-6:53, 53:14. Dr. Daniel Zehr’s hearing was held on June 2, 1981, and on June 5, 1981, the racing stewards issued Ruling Number 106 suspending Dr. Zehr for violating Rule LAC 11-6:53, 53:14.
All three rulings were timely appealed to the Louisiana State Racing Commission and consolidated for hearing. The hearing was conducted on October 2, 1981, October 22, 1981 and October 23, 1981. The Commission concluded that Dr. Zehr had not violated Rule LAC 11-6:53, 53:14 and lifted the suspension previously imposed on him by the racing stewards. With respect to the two charges against King, the Commission found that King was negligent in his handling of “Jewel Marie” and “Sad Majority” by allowing Banamine to be administered to the horses prior to a race.
A Petition for Judicial Review was filed by King in the Civil District Court for the Parish of Orleans. After a full review of the record, the District Court reversed the decision of the Commission to suspend King and this appeal followed.
Our review of the record shows that the consolidated cases of King and Dr. Zehr were based upon the same facts and each presented the same evidence.
Dr. Harland G. Bigley, Director of Clinical Research for the Animal Health Products Division, Shering Corporation, which produces Banamine, testified that Bana-mine cannot stimulate or depress a horse. Rather, it eliminates certain forms and certain degrees of inflammation. However, it cannot make a horse run faster than he is supposed to.
Eugene F. Hayes, a biochemist and a former chemist for the Commission, testified that the levels of Banamine in both horses were trace amounts and that a concentration of the medication of 500 to 1000 times higher would be the effective level for the non-steroid anti-inflammatory purpose intended for the medication.
Dr. Thomas Tobin, by affidavit testified that Banamine has no capacity to stimulate *656 a horse. It normalizes the performance of the horse when the Banamine is present in the horse at a high concentration. He stated that twenty-four hours after 1 mg/kg of Banamine is administered, the concentration of Banamine would be 1.5 uf/ml which is about 1000 times higher than the levels found in either horse. The blood levels of Banamine would be lower than the 1.4 or 6.6 ng/ml. He felt that such a low blood concentration of Banamine would be unlikely to affect the performance of the horse.
Dr. Frank J. Douglas, Jr., Chief Veterinarian for the Commission, in response to a question on whether or not the amount of Banamine found in the sample could affect the horses performance in the race or not, admitted that he had no idea of what effect 1.4 ng/ml or 6.6 ng/ml in the urine would have on the performance of a horse during a race. He stated that these amounts were infinitesimal to him and he had no studies available to him. He knew veterinarians were using the drug at racetracks twenty-four hours before a race and that the consensus of opinion that using it twenty-four hours before a race was safe as far as the tests were concerned.
Dr. McClure, a veterinarian, testified that at a meeting of veterinarians and a former Racing Commission Chairman, it was discussed whether or not it was legal to use Banamine. The Chairman informed the veterinarians that he could not foresee any problem using the drug 24-30 hours prior to a race.
The Commission concluded that Dr. Zehr had not violated Rule LAC-11:6:53, 53:14 reasoning that the Banamine was given pre-race to the horses at such a time as to be considered therapeutic under the Rules of Racing. However, the Racing Commission concluded that the Banamine was' probably supplemented at an unspecified time since the level of the drug in the urine specimens could not have been detected had the injections been administered twenty-four hours before the race. Therefore, King was negligent in handling the horses in violation of Rule LAC 11-6:53, 53:14.
The District Court ruled that the finding of the Racing Commission that no Bana-mine could be detected 24 hours post injection was manifestly erroneous in view of the evidence as a whole. He concluded that the Commission arbitrarily concluded that Banamine was probably supplemented at an unspecified time.
This Court is limited in its review of this appeal to whether or not the trial judge was manifestly erroneous in his decision. We find, after careful scrutiny of the record, that the trial judge was not manifestly erroneous in his decision to reverse the decision of the Racing Commission as the evidence amply supports his finding. For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. Rules of Racing LAC 11-6:53, 53:14 provides:
53:14 No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of, any drug not permitted by LAC 11-6:54 to any horse entered for a race, which is of such character as could affect the speed of the horse in such race. Every owner, trainer, or groom must guard, or cause to be guarded, each horse owned, trained or attended by him in such manner as to prevent any person or persons from administering to the horse, by any method, any drug, not permitted by LAC 11-6:54, prior to the time of the start of the race which is of such character as to affect the speed of the horse in such race.